**GOOD SAMARITAN HOSPITAL et al., Appellants,**

**v.**

**OHIO DEPARTMENT OF HEALTH, Appellee.**

[Cite as *Good Samaritan Hosp. v. Ohio Dept. of Health* (1994), 95 Ohio App.3d 556.]

Court of Appeals of Ohio,
Franklin County.

Nos. 93APH09–1335, 93APH09–1336.

Decided June 30, 1994.

*Brickler & Eckler, Gretchen A. McBeath* and *James F. Flynn,* for appellant.

*Lee Fisher,* Attorney General, *Elise Porter* and *Dennis Nealson,* Assistant Attorneys General, for appellee.

---

DESHLER, Judge.

This is an appeal by appellants, Good Samaritan Hospital and Response Technologies, Inc., from an order of the Certificate of Need Review Board

("CONRB"), affirming a decision of the Director of the Ohio Department of Health ("ODH"), in which the director determined that a procedure known as peripheral stem cell reinfusion is a reviewable activity pursuant to R.C. 3702.51(R)(3)(a).

By letter dated November 13, 1992, the Director of ODH informed Response Technologies, Inc. that the performance of peripheral stem cell reinfusion is a reviewable activity under certificate of need ("CON") laws. The director sent Good Samaritan Hospital a similar letter on December 29, 1992. Both appellants subsequently filed an appeal with the CONRB, challenging the director's ruling. A joint motion to consolidate the cases was granted, and the matter was scheduled for a hearing before a CONRB hearing examiner.

Three physicians testified at the hearing. Appellants presented the testimony of Dr. Gary Nicholson, an internist who practices in the Dayton area. ODH presented the testimony of Dr. Edward Copelan and Dr. Hillard Lazarus. Dr. Copelan is an associate professor of internal medicine at the Ohio State University College of Medicine and the acting director of the bone marrow transplant division at the Ohio State University Hospital. Dr. Lazarus serves as the director of the bone marrow transplantation program for Case Western Reserve University and the medical director of the in-patient bone marrow transplant unit at University Hospitals of Cleveland.

All three physicians were in general agreement concerning the basic procedures involved in performing peripheral stem cell reinfusion. The following facts regarding these procedures are derived from the testimony of the three medical witnesses and from exhibits admitted at the hearing.

Peripheral stem cell reinfusion is a supportive care technique used in the treatment of certain advanced forms of cancer. Stem cell reinfusion came about as an outgrowth of research in the field of bone marrow transplantation. Generally, bone marrow transplantation is used in the treatment of cancer patients who require high dosages of chemotherapy in an attempt to arrest tumor cells. The problem with utilizing such high dosages, however, is that non-tumor cells, including blood forming cells, are damaged along with the tumor cells, resulting in a dose-limiting toxicity. The aim of bone marrow transplantation (and peripheral stem cell reinfusion) is to enable patients to receive higher than normal dosages of chemotherapy and then to follow up the treatment with bone marrow reinfusion in order to circumvent toxicity to the bone marrow.

Initial bone marrow transplants often involved procurement of bone marrow from the sibling of a patient because of greater likelihood of compatibility between the donor and patient. The process of transferring bone marrow from a donor to a patient is termed allogeneic bone marrow transplantation. Because of limitations in this process, researchers began investigating the possibility of

collecting a patient's own (autologous) bone marrow, preserving it, and then reinfusing the marrow after eliminating the toxic drugs from the patient's system. Utilizing a patient's own bone marrow has been demonstrated to be effective in treating such diseases as lymphomas, Hodgkin's disease, acute leukemia and breast cancer.

Further research revealed that hematopoietic stem cells,[1] the cells obtained from the bone marrow and reinfused after the patient has received drug therapy, are also present in the peripheral blood in relatively small numbers. Studies eventually led to procedures for procuring stem cells from the peripheral blood. In order to collect a sufficient number of stem cells for reinfusion, the cells are artificially forced out of the bone marrow and into the peripheral blood.

In general, the peripheral stem cell reinfusion procedure involves the removal and freezing of a patient's own stem cells, treating the patient with high dosages of chemotherapy, and then reinfusing the stem cells, with the intent of restoring the patient's blood producing and immune systems. The witnesses basically described peripheral stem cell reinfusion as a four-step procedure. The first step of the process involves "mobilization" of the stem cells. At this stage, chemotherapy is given to the patient to mobilize or force marrow cells into the patient's bloodstream. The patient is then given growth factors to stimulate the stem cells to grow and appear in the peripheral blood.

The next step involves the collection or "harvesting" of the stem cells. During this stage, the patient's blood is extracted through a catheter. A pheresis machine separates the various types of blood cells (a process referred to as centrifugation), with the ultimate purpose of gathering the stem cells contained within the white blood cells. The rest of the blood, including red blood cells and plasma, is immediately returned to the patient. The number of pheresis procedures varies with each individual patient. In general, a patient undergoes between three and seven pheresis procedures in order to collect enough cells for reinfusion.

After the stem cells are collected, the cells are placed in a sterile collection chamber, processed and then frozen ("cryopreservation") in preparation for reinfusion. The patient then receives high doses of chemotherapy in an effort to destroy the cancer cells.

The final stage involves reinfusion of the stem cells. As with the procurement of the stem cells, a catheter is utilized to infuse the marrow cells back into the patient.

---

1. Hematopoietic stem cells, which reside in the bone marrow, are responsible for the production of circulating peripheral blood cell elements (white blood cells, red blood cells and platelets).

While the witnesses were in general agreement as to the procedures involved in peripheral stem cell reinfusion, appellants' witness and ODH's witnesses presented conflicting testimony on the determinative issue of whether the process constitutes an organ transplantation service.

Appellants' expert, Dr. Nicholson, testified that bone marrow is an organ which serves the purpose of producing blood cells.[2] He described a stem cell as "a cell that's a very primitive early cell that has the capability of not only reproducing itself * * * but also of—through a series of progressive maturation steps giving rise to the various cell lines that make up the blood." He later stated that, "technically, I think the stem cell is an organ component."

Dr. Nicholson defined "transplantation" as "taking an organ or something from one part of the body to another party of the body, or I suppose, from one person's body and putting it in someone else's body." He testified that stem cell reinfusion does not involve taking the stem cells from one part of the body and putting them in another part of the body. Rather, he stated, "you're taking them out through a catheter in the vein and you're actually putting them back through the same catheter." He testified that the cells "migrate back to where they first came from," i.e., the marrow.

In contrast to the testimony of Dr. Nicholson, both of the experts testifying on behalf of ODH, Dr. Copelan and Dr. Lazarus, stated that stem cell reinfusion met the definition of an "organ transplant procedure."

Concerning the nature of a stem cell, Dr. Copelan testified that he considered the stem cells to be "part of an organ." He stated that "all the components of the bone marrow can be produced from a single stem cell." Dr. Lazarus testified that the hematopoietic stem cell is actually an organ.

Dr. Lazarus also testified concerning the nature of bone marrow. According to Dr. Lazarus, bone marrow is a very complicated organ that "produces all of the blood and is a great part of the immunologic system * * *." He stated that "[i]t's a little more difficult to appreciate the concept of bone marrow because it's such a diffuse organ when one compares it to the heart or the lungs or the liver or the kidneys, which are organs that are much more localized and literally can be lifted out in toto." Within most of the bones in the body, there is a hollow cavity filled with cellular material, termed the "bone marrow." The cells in the cavity grow and divide, and when they reach a certain period of maturation, they leave the bone marrow cavity and become peripheral blood. Dr. Lazarus stated that bone marrow "actually makes its own environment."

---

**2.** We note that all three witnesses at the hearing testified that bone marrow is an organ.

Dr. Copelan defined a "transplant" as the "transfer of tissue from one part of a body to another or from one individual to another." According to Dr. Copelan, bone marrow transplantation and peripheral stem cell reinfusion procedures both involve the transfer of cells from one part of the body to another. Specifically, Dr. Copelan stated:

"When we take bone marrow, we take it out of, for instance, the pelvis. When we reinfuse it to the blood, we know that it recapitulates the marrow throughout the central skeleton. So it is anatomically in a different place.

"If you take part of the bone marrow, that is the peripheral stem cells, out of the blood and give—infuse them back in the blood, they don't stay there. They go to the bone marrow and repopulate the bone marrow, which is why it's an organ transplant."

Dr. Lazarus gave similar testimony on this issue, stating:

"When we give the bone marrow back, the bone marrow cells are given back as a transfusion. And they will circulate in the bloodstream and home back to any and all of the bones in the individual in question. So that while bone marrow may be obtained from the hip, and all of the bone marrow is destroyed, when you go back and look at people who have undergone a bone marrow transplant, all of the bones have been repopulated by these seeds of bone marrow, if you will, by putting them back intravenously. And the same thing is true when the bone marrow is collected from the peripheral blood."

As previously noted, Dr. Copelan testified that stem cells are part of an organ. According to Dr. Copelan, the definition of an "organ transplant" is not limited to the transfer of a whole organ; rather, he noted, an organ transplant can involve the transfer of only part of an organ. Dr. Copelan testified that:

"The fact that * * * it's a part of the organ is no different from a liver transplant where you take a part of a liver and—from a mother, say, giving it to a kid. It's still an organ transplant whether you take part of the organ or the whole organ."

Following the hearing, the CONRB hearing examiner issued a report on July 30, 1993, recommending to the CONRB that the decision of the Director of ODH (that stem cell reinfusion constitutes a reviewable activity) should be overruled. The CONRB met on August 19, 1993, to consider the matter. Failing to obtain a majority vote, the CONRB, by order issued on August 27, 1993, sustained the determination of the Director of ODH based upon the automatic adoption provision of R.C. 3702.60.

On appeal, appellants assert two assignments of error for review:

"A. The board, adopting the initial determination of the Director of ODH, erred in its reliance and application of Ohio Adm.Code 3701–12–32 in determining whether peripheral stem cell reinfusion is a reviewable activity under R.C. 3702.51(R).

"B. The board, adopting the initial determination of the Director of ODH, erred in finding that peripheral stem cell reinfusion constitutes a 'transplantation of an organ' as is stated in the definition of a reviewable activity under R.C. 3702.51(R)."

We will address appellants' assignments of error in inverse order. Under the second assignment of error, appellants assert that the CONRB erred in finding that peripheral stem cell reinfusion constitutes an "organ transplantation service" as defined under R.C. 3702.51(R).

R.C. 3702.60(E)(3) sets forth the standard of review for this court in reviewing an appeal from the CONRB, and provides:

"The court shall affirm the board's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (E)(2) of this section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order."

The issue before this court is whether the CONRB erred in affirming the determination of the Director of ODH that peripheral stem cell reinfusion is a reviewable activity pursuant to R.C. 3702.51(R)(3)(a).

R.C. 3702.51(R)(3)(a) provides:

"(R) Except as otherwise provided in sections 3702.54, 3702.55, and 3702.56 of the Revised Code and divisions (S), (T), (U), and (X) of this section, 'reviewable activity' means any of the following:

" * * *

"(3) The addition of a megavoltage radiation therapy service operated by or on behalf of a health care facility and the addition by any person of any of the following health services, regardless of the amount of operating costs or capital expenditures:

"(a) A heart, heart-lung, lung, liver, kidney, bowel or pancreas transplantation service *or a service for transplantation of any other organ* unless transplantation of the organ is designated by public health council rule not to be a reviewable activity[.]" (Emphasis added.)

Appellants' argument that peripheral stem cell reinfusion is not a service for transplantation of an organ is twofold: (1) stem cell reinfusion is not a "transplant"; and (2) stem cells do not constitute an "organ."

In support of the contention that stem cell reinfusion is not a transplant, appellants note that Dr. Copelan defined a "transplant" as "moving an organ from one part of the body to another in an individual or taking an organ from one individual and putting it into another." Further, Dr. Nicholson similarly defined a "transplant" as "taking an organ or something from one part of the body to another part of the body, or I suppose, from one person's body and putting it in someone else's body." Appellants acknowledge that while most traditional concepts of a transplant involve a major solid organ being transferred from one person to another, a transplant can also mean taking an organ from one part of the body and moving it to another. Appellants contend, however, that stem cell reinfusion does not meet the definition of a "transplant" because the source and repository of the stem cells is the same, i.e., the blood.

Both witnesses for ODH gave testimony contrary to this view. Dr. Copelan testified that both bone marrow transplantation and peripheral stem cell reinfusion meet the definition of a "transplant" because cells are removed from one part of the body and, after they are reinfused, migrate to an anatomically different location. By way of example, he stated that in the case where bone marrow is taken from the patient's pelvis, when the marrow is reinfused it recapitulates the marrow throughout the entire central skeleton, not just back to the pelvis. Similarly, in the case of peripheral stem cell reinfusion, Dr. Copelan stated that stem cells which are taken from the blood and then reinfused back into the blood do not stay in the blood; rather, the stem cells repopulate the bone marrow. Dr. Copelan further testified that when stem cells are procured from the peripheral blood, it cannot be determined where a particular cell originated from or, after reinfusion, where that cell will eventually reside in the central skeleton. Dr. Lazarus gave similar testimony regarding both bone marrow transplantation and peripheral stem cell reinfusion.

Concerning the nature of a stem cell, appellants assert that stem cells are simply cells, and that they represent only one of many components of the bone marrow. Appellants maintain that under any legal or clinical definition, a cell in not an organ.

In contrast to the testimony of appellants' witness, Dr. Nicholson, who defined a "stem cell" as a cell, Dr. Lazarus testified that the stem cell is in fact an organ. He stated that investigators recently demonstrated that "the pluripotent stem cell, the human bone marrow stem cell, makes not only the blood cells * * * but it also makes the bone microenvironment. So it's very clear that the hematopoietic stem cell is in fact an organ." Dr. Lazarus cited ODH Exhibits C and E, two medical journal articles, in support of his testimony. ODH Exhibit C notes that "[t]he isolation of stem cells * * * means the amount of bone marrow needed for a transplant can be reduced to a single stem cell, which is capable of

reconstituting the entire immune system." ODH Exhibit E notes that research has shown that a single stem cell is "capable of reconstituting the hematopoietic cells and their associated bone marrow microenvironment."

Dr. Copelan testified that stem cells were part of an organ. Even accepting the view that a stem cell is only a part (or a component) of an organ, rather than an organ, Dr. Copelan provided testimony that the transfer of part of an organ can still constitute an organ transplant, and that peripheral stem cell reinfusion is no different from such transplants. Dr. Copelan cited a liver transplant as an example of an organ transplant which could involve the transfer of part of an organ. We note that appellants' witness, Dr. Nicholson, apparently accepted the view that a transplant could involve part of an organ, as he acknowledged that a cornea transplant was an example of the transplant of a "component of an organ." Further, while Dr. Nicholson testified that a stem cell was a cell, he also stated, similar to the testimony of Dr. Copelan, that the stem cell is an organ component.

The record of the hearing before the CONRB hearing examiner reveals, essentially, a battle between the expert medical witnesses. All three witnesses provided credible testimony. There was an obvious conflict between appellants' witness and ODH's witnesses regarding the determinative issue. We note that, in support of their position, appellants cite the findings of the CONRB hearing examiner, in which the examiner concluded that stem cell reinfusion was not an organ transplant service. Whether we agree or disagree with the findings of the hearing examiner is not at issue. Rather, the issue before this court is whether the order of the CONRB, affirming the decision of the Director of ODH that peripheral stem cell reinfusion is a reviewable activity, is supported by the evidence. We find that, although there was a conflict in the testimony of the medical experts, Dr. Copelan and Dr. Lazarus presented reliable evidence which would support a finding by the Director of ODH that peripheral stem cell reinfusion is a reviewable activity under R.C. 3702.51(R)(3) as "a service for transplantation of any other organ." Thus, the CONRB did not err in sustaining the determination of the director.

Appellants' second assignment of error is overruled.

Under the first assignment of error, appellants assert that the CONRB, in adopting the determination of the Director of ODH, erred in its reliance upon Ohio Adm.Code 3701–12–32 in determining that peripheral stem cell reinfusion is a reviewable activity under R.C. 3702.51(R). The thrust of appellants' argument is that the Director of ODH determined that stem cell reinfusion was a reviewable service because it met the definition of "bone marrow transplantation" under Ohio Adm.Code 3701–12–32(B).[3] Appellants contend that the Public Health

---

**3.** Ohio Adm.Code 3701–12–32(B) provides:

Council lacks the authority to make stem cell reinfusion reviewable through this rule, and that any determination of reviewability must be rendered based upon the language of R.C. 3702.51(R).

Based upon our finding, under the previous assignment of error, that there is substantial, reliable and probative evidence to support a finding that peripheral stem cell reinfusion meets the definition of an "organ transplantation service" under R.C. 3702.51(R)(3)(a), appellants have failed to show prejudicial error. Accordingly, appellants' first assignment of error is overruled.

Based upon the foregoing, appellants' first and second assignments of error are overruled and the order of the CONRB, sustaining the determination of the Director of ODH that peripheral stem cell reinfusion is a reviewable activity, is affirmed.

*Order affirmed.*

PEGGY BRYANT, J., concurs.

CLOSE, J., concurs separately.

CLOSE, Judge, concurring separately.

While I am in complete agreement with the majority opinion, I feel an additional comment is necessary.

The legislature has deemed fit to make the decision by the Director of ODH appealable to the CONRB. By statute, after the report and recommendation of the hearing officer is submitted, if five of the nine-member board does not agree on the outcome of the case, the decision of the director becomes the decision of the board. While that sounds good in theory, in practice, although for many good reasons, it is seldom that all nine members of the board are available to vote on any hearing examiner's recommendation. The effect is that in some cases, although the board may be in support of the hearing officer's recommendation, that recommendation itself is virtually held for naught and the director's order is adopted simply because each recusal or non-attendance by a board member amounts to a rejection of the hearing officer's recommendation.

Because this case is clearly distinguishable from the case of *In re Cleveland Clinic Found.* (1994), 94 Ohio App.3d 348, 640 N.E.2d 900, equitably, though not legally, I have some of the same misgivings. In the review of the legal process,

---

" 'Bone marrow transplantation' means replacement of a patient's bone marrow with autologous or allogeneic hematopoietic stem cells, when the patient's own bone marrow has been ablated by disease or therapy, for the purpose of achieving long-term management of certain high-risk hematologic, immunologic, or oncologic conditions or enzymatic deficiency diseases."

we understand the principle of presenting witnesses who are subject to both direct and cross-examinations, with the trier of fact (in this case, the hearing officer) making the ultimate determination as to the weight of the evidence. It seems to me that, if that is the process we are going to use, then we should not impose burdens on the litigants that, in essence, make that process futile, if perhaps for no better reason then that various board members have been honestly and ethically prohibited from voting by virtue of conflict of interest. Certainly some absences by board members are understandable and certainly it speaks to the high ethics and integrity of the board that recusal takes place. I question whether the result, however, is what the legislature intended in allowing for this type of review.